ÁNGEL R. PADILLA ET AL., demandantes y recurrentes, *v.* WKAQ RADIO, demandada y recurrida; ÁNGEL R. PADILLA ET AL., demandantes y recurrentes, *v.* CARIBBEAN INTERNATIONAL NEWS CORPORATION, demandada y recurrida.

*Número:* RE-94-522          *Resuelto:* 7 de marzo de 1996

*Peter John Porrata*, abogado de los recurrentes; *José Colón Rodríguez*, abogado de los recurridos.

— o —

Opinión concurrente del Juez Asociado Señor Negrón García.

I

En *Soc. de Gananciales v. López*, 116 D.P.R. 112, 117 (1985), dijimos que "[n]uestra atención no se ha concentrado tanto en el análisis abstracto del status de la persona afectada *como en el contexto específico en que se da la controversia*: la naturaleza de la declaración alegadamente difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran y la relación funcional entre estos factores". (Énfasis en el original suprimido y énfasis suplido.)

Allí concluimos que era "funcionario público" el policía que presentó una acción por difamación contra un ciudadano privado basada en expresiones hechas en alta voz en el Cuartel de la Policía y reiteradas en querella formal ante la Superintendencia imputándole al agente haber fabricado un caso. Señalamos que "[l]as imputaciones formuladas en este caso atañen a la conducta de un agente de la Policía, asunto de reconocido interés público". *Soc. de Gananciales v. López*, supra.

II

La presente acción por difamación está basada en una noticia publicada en el periódico *El Vocero de Puerto Rico* y

en un reportaje transmitido por la cadena WKAQ-Radio en los que se le imputa al agente Ángel Padilla haber obstruido la investigación de un caso.

Al igual que en *Soc. de Gananciales v. López*, supra, las imputaciones formuladas están *irremisiblemente* relacionadas con una conducta en el *ámbito oficial* del agente Ángel Padilla. En consecuencia, debe ser considerado "funcionario público" para efectos de su acción por difamación y cumplir con el requisito de *malicia real.*

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Este Tribunal, como máximo intérprete de nuestra Constitución y de las leyes que componen nuestro ordenamiento jurídico, tiene la facultad, *y el deber*, de establecer las normas jurisprudenciales que rigen en nuestra jurisdicción. *La responsabilidad es extraordinaria e inmensurable.*

Es por ello que, al resolver un caso en particular, los integrantes del Tribunal deben actuar con gran cautela y cuidado, y luego de un exhaustivo y ponderado análisis de los hechos y de la ley aplicable a los mismos. El así hacerlo evita incurrir en la nociva e indeseable práctica de tener que, en un futuro inmediato, modificar o revocar las normas jurisprudenciales establecidas.

Debe estar claro que *no* estamos sosteniendo que este Tribunal no pueda modificar o revocar sus decisiones anteriores. *La doctrina del "stare decisis" no llega tan lejos.* Los tiempos cambian. La plantilla de este Tribunal, igualmente, varía; ello, naturalmente, causa que se modifiquen o revoquen las normas anteriormente establecidas. Nos referimos a, *y criticamos*, otra situación. Esto es, aquella en que se pretende revocar las normas jurisprudenciales establecidas *a base de distinciones realmente inexistentes.*

Este Tribunal *no* se puede dar el "lujo" de estar "dando un pasito pa'lante y otro pa'tras" y de estar, continuamente, expresando que "donde no dijimos, debimos haberlo hecho, y donde dijimos, no lo hicimos". Ello causa un terrible desasosiego, y hasta el caos, en nuestro sistema de justicia. *No tenemos "derecho" a hacerle eso a nuestros jueces de instancia y a la clase togada en general.*

Es cierto que la consistencia en nuestras decisiones *no* constituye garantía absoluta de la corrección de las mismas. Debe mantenerse presente, sin embargo, que la inconsistencia, y la continua revocación de normas recientes, es un "mal" peor.

I

La norma que "regula" la situación hoy ante nuestra consideración fue establecida en *Soc. de Gananciales v. López*, 116 D.P.R. 112 (1985); caso en que, *de manera expresa y específica*, el Tribunal adoptó la *norma mayoritaria* de las jurisdicciones estatales norteamericanas a los efectos de que un policía es un "funcionario público" a quien le aplica la "doctrina sobre malicia real". En dicho caso se resolvió que una manifestación —a los efectos de que el policía demandante le había "fabricado" un caso a los demandados— *afectaba la conducta y reputación* del agente policíaco, el cual es un "asunto de reconocido interés público"; resolvimos que, *en esas circunstancias*, el policía era un "funcionario público" a los fines de la aplicación de la "doctrina de malicia real". Al no haber probado la existencia de la misma, este Tribunal le desestimó el caso al policía demandante. Véase *Soc. de Gananciales v. López*, ante, pág. 117.

La norma implantada en *Soc. de Gananciales v. López*, ante, encuentra apoyo, no hay duda en jurisprudencia del Tribunal Supremo de los Estados Unidos. Como correctamente señala el compañero Juez Asociado Señor Corrada

Del Río, en su opinión concurrente, el Supremo federal ha resuelto que cualquier imputación o cargo de conducta criminal contra un policía, no importa cuán remota en tiempo y espacio, *nunca puede ser irrelevante* en relación con su "aptitud" para desempeñar el cargo que ocupa y la aplicación al caso de la "doctrina de malicia real". Véase *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971).

## II

Somos del criterio —*distinto a la disidencia*— que en el presente caso las circunstancias son *exactamente* las mismas que en el antes citado caso de *Soc. de Gananciales v. López*, ante. Ello así ya que la noticia aquí objetada le imputa al policía Ángel R. Padilla que *obstruyó la investigación criminal* que llevaba a cabo la Policía de Puerto Rico en relación con un delito de secuestro, alegadamente cometido por otras personas; actuación supuestamente realizada por Padilla, conforme la noticia publicada, dentro de un contexto general de corrupción policiaca. No hay duda, *en consecuencia*, que dicha noticia le imputaba al demandante Padilla haber incurrido en conducta criminal; imputación que definitivamente afecta su reputación y "aptitud" para desempeñar el cargo que ocupa de policía estatal.

Siendo ello así, *forzosa* resulta la conclusión de que, al amparo de lo resuelto por este Tribunal en *Soc. de Gananciales v. López*, ante, y de lo resuelto por el Tribunal Supremo federal en *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), y *Monitor Patriot Co. v. Roy*, ante, el demandante Padilla efectivamente viene en la obligación de probar "malicia real" por parte de los aquí demandados. *Dicho de otra forma*, si el policía demandante en el caso de *Soc. de Gananciales v. López*, ante, era, para efecto de la aplicación de la "doctrina de malicia real", un "funcionario público", *no* hay duda alguna de que el policía demandante en el presente caso *igualmente* lo es.

Ello, llana y sencillamente, debido al *hecho incuestionable* de que en *ambos* casos la imputación objetada como libelosa, *repetimos*, afecta la reputación del agente policiaco y su aptitud para desempeñar dicho cargo; razón por la cual en *ambos* casos la parte demandante viene en la obligación de demostrar "malicia real" de parte del demandado.

De resolverse de otra manera —*como pretende la disidencia*— el periódico demandado en el presente caso —y la prensa, en general, del País— tendrían *todo* el derecho a preguntarse el porqué de la utilización de una "vara distinta" a la que se utilizó en el citado caso de *Soc. de Gananciales v. López*, ante. Es por ello que suscribimos la Sentencia del Tribunal.(¹)

— O —

Opinión concurrente emitida por el Juez Asociado Señor Corrada Del Río, a la cual se une el Juez Presidente Señor Andréu García.

En el presente recurso se plantea si un policía, al cual se le imputó en un periódico y estación de radio el ser miembro de la policía o agente de la Oficina del Fiscal Especial Independiente (o ambas cosas), así como haber sido interrogado por presunta obstrucción de la investigación sobre el secuestro y el robo a un médico, es un funcionario público para efectos de la acción de autos por difamación y

---

(¹) El Juez suscribiente —por los *fundamentos expresados* en la opinión disidente que en dicho caso emitiera— *disintió* de la norma establecida por el Tribunal en *Soc. de Gananciales v. López*, ante.

Hoy votamos conforme. Lo hacemos por cuanto, como expresáramos en la opinión de conformidad que emitiéramos en *Acevedo Vilá v. Corrada Del Río*, 138 D.P.R. 886, 888 (1995), como "integrante de este Tribunal, que ama y respeta el mismo, venimos en la obligación de velar por el buen nombre y reputación de esta institución en todo momento". (Énfasis en el original suprimido.)

La norma establecida hace escasamente unos pocos años en *Soc. de Gananciales v. López*, ante, repetimos, *nos obliga a todos*. No podríamos suscribir una ponencia que variara, *de forma errónea e innecesaria*, dicha norma. *Nuestra obligación primaria es, repetimos, con el buen nombre y reputación del Tribunal.*

libelo. Considerado el derecho fundamental de la libertad de palabra o de prensa encarnado en el Art. II, Sec. 4 de nuestra Constitución, L.P.R.A., Tomo 1, así como el alto interés del público en la discusión abierta de las cualidades, capacidades y aptitudes de los llamados a velar por la seguridad y el orden público, quienes están revestidos de una gran responsabilidad y poder sobre nuestras vidas, corresponde resolver que en el caso de autos el policía era un funcionario público para efectos de la acción instada sobre difamación y libelo.

## I

El 11 de diciembre de 1990, el periódico *El Vocero de Puerto Rico* publicó una noticia bajo el titular "Sigue pesquisa asesinato de médico". Sobre el titular aparecieron cinco (5) fotografías entre las que se encontraba una de Ángel R. Padilla, quien para esa fecha era miembro de la Policía "y/o" agente de la Oficina del Fiscal Especial Independiente. Debajo del titular aparecía el reportaje siguiente:

El sargento Israel Ciuro (centro en foto izq.) y los agentes Jorge L. Figueroa y Alberto Maldonado, de la Unidad del Crimen Organizado del CIC de Bayamón, llegan a esas oficinas para seguir la pesquisa del asesinato la semana pasada del Dr. Fernando Pérez Ruiz en su finca de Dorado. El lunes fueron interrogados el agente de la Unidad de Robos del CIC de Bayamón, Angel Rivera Marrero (foto al centro, arriba), conocido como Bombi *y el también Agente Angel Padilla, de la Oficina del Fiscal Especial Independiente (FEI), este último por presunta obstrucción de la investigación sobre el secuestro y el robo al mencionado médico.* José A. Cardona Sampayo (recuadro, en foto der.), director de la Unidad de Robos del CIC de Bayamón, también fue interrogado. A la der., dos agentes del FBI, quienes también investigan la desaparición de más de $28 mil en el Correo principal en Bayamón recientemente. (Fotos EL VOCERO por Rafael Angel Rivera). (Énfasis suplido.) Apéndice, pág. 000004.

El 17 de diciembre de 1990, WKAQ-Radio transmitió un

reportaje de la corresponsal Julia Alemán en el que se aseguraba que por el cargo de obstrucción en la investigación del secuestro del médico había sido acusado un empleado de la oficina del Fiscal Especial Independiente identificado como Ángel Padilla.

Con motivo de estos reportajes, Ángel R. Padilla, su esposa Isabel Vega Yordán y la sociedad de gananciales integrada por ellos instaron demanda por difamación y libelo contra Caribbean International News Corp. —compañía encargada de la publicación del periódico *El Vocero de Puerto Rico* (en adelante *El Vocero*)— y WKAQ-Radio. Alegaron en síntesis que para la fecha de la publicación y difusión de los reportajes, Padilla era "policía y/o agente del Fiscal Especial Independiente" (Apéndice, pág. 000001); que la información publicada y difundida por los demandados era falsa, denigrante e insultante; que había sido publicada de *manera negligente*; que dichas expresiones afectaron su reputación profesional e individual, y que como consecuencia de ello los demandantes habían sufrido daños y angustias mentales.

Luego de varios trámites procesales, *El Vocero* presentó una solicitud de sentencia sumaria en la que solicitaba la desestimación de la demanda presentada en su contra. Fundamentó su solicitud en los planteamientos siguientes: que el demandante Padilla era un "funcionario público" para efectos de la acción por difamación y libelo por ser agente del orden público, según nuestra decisión en *Soc. de Gananciales v. López*, 116 D.P.R. 112 (1985); que de acuerdo con ello el demandante estaba obligado a establecer de manera "clara y convincente" que la noticia difamatoria había sido publicada *mediando malicia real*; que en este caso el demandante no podía cumplir con ese requisito, puesto que de la declaración jurada que se acompañaba surgía claramente que *no había mediado malicia real* en la publicación de la referida noticia, y que, por lo tanto, procedía que se desestimara la demanda en su contra de

manera sumaria para proteger su derecho constitucional a la libertad de prensa. Posteriormente, WKAQ-Radio presentó una solicitud de sentencia sumaria a su favor en la cual arguyó planteamientos idénticos a los esbozados por *El Vocero* en su solicitud.

En su oposición a ambas solicitudes, los demandantes alegaron que no procedía que se dictara sentencia sumaria en este caso por las razones siguientes: que en nuestra jurisdicción rige la norma del "enfoque funcional" para determinar si una persona es o no un "funcionario público" para efectos de una acción por difamación y libelo, y que de acuerdo con el referido análisis no todos los policías ni todos los empleados gubernamentales son automáticamente "funcionarios públicos", sino que esta cuestión se debe determinar caso a caso; que de acuerdo con las circunstancias particulares del caso de marras, el demandante es una "figura privada" para efectos de la acción incoada y que, de acuerdo con ello, sólo estaba obligado a demostrar que las noticias habían sido publicadas o difundidas de manera negligente; que existe controversia de hechos en torno a si el demandante era o no un funcionario público, y si las partes demandadas habían actuado de manera negligente, por lo que no procedía que se desestimaran las demandas de forma sumaria. Se acompañó declaración jurada del demandante Ángel R. Padilla en la que indica que la información publicada era falsa; que no surgió de documentación alguna en poder de la Policía de Puerto Rico; que fue hecha de forma negligente; que la noticia era de naturaleza denigrante e insultante.

Luego de que *El Vocero* presentó una réplica a la aludida oposición de los demandantes, el tribunal de instancia desestimó las demandas presentadas y dictó sentencia sumaria a favor de los demandados concluyendo que el policía era un "funcionario público", por lo que se requería qué el demandante aportara prueba clara, robusta y convincente de la existencia de malicia real, cosa que no hizo.

Inconforme, acuden ante nos los demandantes y solicitan que revisemos la determinación que hiciera el foro de instancia de que Padilla es un "funcionario público" para efectos de la acción por difamación y libelo presentada.

Expedimos el recurso y con el beneficio de la comparecencia de las partes, resolvemos.

## II

Hemos reiterado que la litigación en casos de difamación y libelo ilustra el conflicto de dos (2) valores de alto interés público, derechos reconocidos como fundamentales en nuestra Constitución: la libertad de palabra o de prensa encarnada en el Art. II, Sec. 4, *supra*, y la protección contra ataques abusivos a la honra y reputación de las personas y a su vida privada o familiar, dispuesta en el Art. II, Sec. 8 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. Véanse, entre otros: *Giménez Álvarez v. Silén Maldonado*, 131 D.P.R. 91 (1992); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685, 690–691 (1984). El conflicto entre estos derechos fundamentales obliga a un análisis ponderado de los intereses involucrados y a la adopción de normas que permitan soluciones adecuadas. Los casos de difamación y libelo plantean esencialmente la necesidad de determinar el peso respectivo del interés en una ciudadanía debidamente informada, en fomentar el debate vigoroso sobre cuestiones de interés público, de un lado, y el derecho a la intimidad, del otro. *Clavell v. El Vocero de P.R.*, supra, pág. 691; *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 420 (1977).

Así, para mantener dicho balance, hemos resuelto que en acciones por difamación y libelo, si el demandante es una figura privada, éste debe probar que las expresiones fueron hechas de manera negligente; y si por el contrario se tratara de una figura pública o funcionario público, el

demandante deberá probar que las expresiones fueron producto de la malicia real del demandado. Véanse, entre otros: *Méndez Arocho v. El Vocero de P.R.*, supra; *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 61–62 (1988); *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 262 (1984).

De otro lado, hemos rechazado que la libertad de prensa, protegida a su vez mediante el requisito de malicia real, solamente cobije la publicación de informaciones correctas; así como hemos resuelto que el propósito de la garantía constitucional es mantener un clima abierto para la discusión franca y vigorosa de los asuntos de interés público y de la conducta y ejecutoria de los funcionarios públicos, por lo que la libertad de prensa incluye tanto la manifestación veraz como la incorrecta. Véase *Garib Bazain v. Clavell*, 135 D.P.R. 475 (1994), y casos allí citados.

Con relación a los funcionarios públicos, en *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), el Tribunal Supremo de Estados Unidos resolvió que no es difamatoria la publicación de un informe falso o de comentarios injustificados relacionados con la conducta oficial de un funcionario público a menos que se demuestre malicia real; mas en la pág. 283, en la nota al calce núm. 23, indicó que dejaba sin resolver el alcance del término "funcionario público" en relación con los diferentes niveles o clasificaciones de empleados públicos. Íd., pág. 283 esc. 23.

Posteriormente, en *Rosenblatt v. Baer*, 383 U.S. 75, 85–86 (1966), el Tribunal Supremo federal delineó los contornos del término "funcionario público" al resolver que:

> [...] It is clear [...] that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.
>
> [...] Where a position in government has such apparent importance that the public has an independent interest in the quali-

fications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in New York Times are present and the New York Times malice standards apply. (Escolios omitidos.) Véanse, además: *Meiners v. Moriarity*, 563 F.2d 343, 352 (7mo Cir. 1977); *Buendorf v. National Public Radio, Inc.*, 822 F. Supp. 6, 10 (D.D.C. 1993).

Por otro lado, en *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964), el Tribunal Supremo federal reformuló la definición del concepto "conducta oficial" esbozado en *New York Times Co. v. Sullivan*, supra, al resolver que:

> The *New York Times* rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.[1]

Asimismo, en *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971), el Tribunal Supremo federal resolvió que

> "as a matter of constitutional law ... a charge of criminal conduct, no matter how remote in time or place, *can never be irrelevant* to an official's or a candidate's fitness for office for purposes of application of the "knowing falsehood or reckless disregard" rule of *New York Times Co. v. Sullivan*. (Énfasis suplido.)

Dicha norma fue reiterada en *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295 (1971).

Conforme a los criterios y normas antes relacionados, las jurisdicciones estatales han desarrollado lo que se entiende como "funcionario público" para efectos de una acción de difamación y libelo. En la mayoría de las jurisdicciones estatales norteamericanas se ha resuelto que los agentes de la policía son "funcionarios públicos", por lo que se le ha aplicado la doctrina de malicia real cuando la in-

---

[1] Véanse, además: *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–345 (1974); *Buendorf v. National Public Radio, Inc.*, 822 F. Supp. 6, 11 (D. D.C. 1993).

formación publicada se refiere a su conducta oficial. Sobre el particular, véanse: *Sanford, Libel and Privacy 2d* Sec. 7.2.3.2., págs. 267–272 (Sup. 1993), y casos allí citados; *Smolla, Law of Defamation*, (CBC) Sec. 2.26, págs. 2-91–2-92 (Sup. 1994), y casos allí citados.

Así, en *Coursey v. Greater Niles Township Publishing Corp.*, 239 N.E.2d 837, 841 (1968), se resolvió que:

> It is our opinion that the plaintiff is within the "public official" classification. Although as a patrolman he is "the lowest in rank of police officials" and would have slight voice in setting departmental policies, his duties are peculiarly "governmental" in character and highly charged with the public interest. It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perharps especially at, an "on the street" level than in the qualifications and conduct of other comparably low-ranking government employees performing more proprietary functions.[2]

Además, en *Smith v. Russell*, 456 So. 2d 462, 463–464 (1984), se señaló que:

> …A police officer qualifies as a public official as defined in *Rosenblatt v. Baer*, 383 U.S. 75, 85–86 ….
>
> The plaintiff is a highly visible representative of government authority who has power over citizens and broad discretion in the exercise of that power. There are probably no public employees more recognizable than armed uniformed police officers. Most citizens are interested in the qualifications and performance of policemen beyond their general interest in the qualifications and performance of all government employees.Véanse, además: *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (1978); *Roche v. Egan*, 433 A.2d 757, 762 (1981); *Buendorf v. National Public Radio, Inc.*, supra.

· Resulta ilustrativo lo resuelto por la Corte de Apelaciones para el Décimo Circuito en *Gray v. Udevitz*, 656 F.2d 588, 591 (10mo Cir. 1981), a los efectos de que:

---

[2] Citado con aprobación en *Rawlins v. Hutchinson Publishing Company*, 543 P.2d 988, 992 (Kan. 1975); *Colombo v. Times-Argus Ass'n, Inc.*, 380 A.2d 80, 83 (1977).

... Street level policemen, as well as high ranking officers, qualify as public officials under the test of *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). They "have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs", *id.* at 85, 86 S.Ct. at 676, and their position 'has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees ....." *Id.* at 86, 86 S.Ct. at 676. The cop on the beat is the member of the department who is most visible to the public. He possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss. The strong public interest in ensuring open discussion and criticism of his qualifications and job performance warrant the conclusion that he is a public official.[3]

En nuestra jurisdicción, en *Soc. de Gananciales v. López*, supra, resolvimos que una manifestación por parte del demandado al efecto de que el policía demandante le había fabricado un caso atañe a la conducta del policía, asunto de reconocido interés público, por lo que el agente policiaco *en dicho pleito* era un funcionario público para fines del derecho de difamación. Al así resolver hicimos claro que desde *Torres Silva v. El Mundo, Inc.*, supra, este Tribunal ha ido desarrollando un enfoque funcional en este campo, por lo que se debe analizar en cada caso el *status* de la persona afectada y "el contexto específico en que se da la controversia: la naturaleza de la declaración alegadamente difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran y la relación funcional entre estos factores". *Soc. de Gananciales v. López*, supra, pág. 117.

Ciertamente, al igual que en las jurisdicciones estatales que así lo han resuelto, en la nuestra los policías tienen control o responsabilidad sustancial sobre el manejo de los asuntos gubernamentales por la gran autoridad que po-

---

[3] Citado con aprobación en *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 957 (D. Md. 1983), y en *Willis v. Perry*, 677 P.2d 961, 963 (Colo. App. 1983).

seen respecto al ciudadano común, así como la gran responsabilidad que recae sobre ellos. Su obligación consiste en proteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, *prevenir, descubrir y perseguir el delito* y, dentro de la esfera de sus atribuciones, *compeler obediencia a las leyes*, reglamentos y ordenanzas municipales. Véase Art. 3 de la Ley de la Policía de Puerto Rico de 1974, Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 L.P.R.A. sec. 1003. Tal obligación recae sobre *todos los miembros* de la Policía, independientemente de su rango o del puesto que ocupen.

La importancia de la función del policía fue reconocida por el Tribunal Supremo federal en *Foley v. Connelie*, 435 U.S. 291, 297–300 (1978),[4] donde se señaló que:

> The police function fulfills a most fundamental obligation of government to its constituency. Police officers in the ranks do not formulate policy, *per se*, but they are clothed with authority to exercise an almost infinite variety of discretionary powers. The execution of the broad powers vested in them affects members of the public significantly and often in the most sensitive areas of daily life. ...A policeman vested with the plenary discretionary powers ... is not to be equated with a private person engaged in routine public employment or other "common ocupations of the community" who exercises no broad power over people generally. ... Police officers very clearly fall within the category of "important nonelective ... officers who participate directly in the ... execution ... of broad public policy". (Escolio omitido.)

Tal importancia de la función de los policías resulta ser significativamente relevante en una situación como la del caso de autos, en la que se publica que se interrogó a un agente del orden público por presunta *obstrucción en la investigación de la comisión de un delito*. Ciertamente se

---

[4] En dicho caso se atacaba la constitucionalidad de una ley de Nueva York que limitaba el nombramiento de miembros de la policía, requiriendo que fueran ciudadanos americanos.

trata de una información relacionada con la conducta oficial del policía, según los criterios esbozados en *New York Times Co. v. Sullivan*, supra; *Rosenblatt v. Baer*, supra, y *Garrison v. Lousiana*, supra. Recordemos que una de las obligaciones de los policías es precisamente prevenir, descubrir y perseguir el delito, así como compeler obediencia a las leyes, por lo que la información publicada se relaciona ampliamente con su conducta oficial. Esto es, se relaciona directamente con sus cualidades y aptitudes para ocupar un puesto de policía. Obsérvese que por disposición expresa del inciso (g) del Art. 18 de la Ley de la Policía de Puerto Rico de 1974 (25 L.P.R.A. sec. 1018(g)), "[l]os miembros de la Policía conservarán su condición de tales *en todo momento* y en cualquier sitio en que se encontraren dentro de la jurisdicción del Estado Libre Asociado, incluyendo cuando estén libres. A estos efectos tendrán todos los deberes y atribuciones que por este Capítulo se imponen a los miembros de la Policía". Según reconocimos en *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497, 502 (1991), "[y]a sea durante un horario regular como fuera del mismo, ést[o]s ininterrumpidamente conservan esa condición".,Y es que así precisamente lo ve la comunidad, por lo que todo lo que afecte su capacidad y aptitud para ejercer su función de agente del orden público está sujeto al escrutinio público. De ahí que no nos quepa la menor duda de que el demandante en el caso de autos es un "funcionario público" para los efectos de una acción de difamación o libelo. Es de alto interés público todo aquello que afecte las cualidades o capacidad de un individuo para ocupar un puesto de policía, debido a que éste es el llamado a mantener el orden público, descubrir y perseguir a todo aquel que comete un delito, así como velar por el cumplimiento de las leyes. Sobre el particular, resulta relevante la expresión de la Comisión de Derechos Civiles en cuanto a que "[e]l policía es el contacto más directo entre la ciudadanía y el ordenamiento jurídico-penal del país". *Los derechos civiles y las*

*intervenciones de la Policía con los ciudadanos*, 37 Rev. Jur. U.P.R. 205, 247 (1968).

En conclusión, por los fundamentos antes expuestos, adoptaríamos la norma de que en Puerto Rico los miembros de la Policía son "funcionarios públicos", por lo que les aplica la doctrina de malicia real para efectos de una acción de difamación y libelo, *cuando la información publicada se refiera a su conducta oficial*, tal como se ha resuelto en la mayoría de las jurisdicciones estatales norteamericanas. Ello debido a la naturaleza de su trabajo, puesto que éstos son los llamados a velar por el orden público y compeler el cumplimiento de las leyes. Vemos, pues, que éstos poseen una gran autoridad respecto al ciudadano común. Con ello no modificamos el razonamiento esbozado por este Tribunal en *Soc. de Gananciales v. López*, supra, sino que por el contrario lo reforzamos. Claro está, de tratarse de un empleado público que no sea un policía, se deberá aplicar el enfoque funcional que establecimos en *Soc. de Gananciales v. López*, supra. Por lo tanto, el demandante en el caso de autos es un "funcionario público" para efectos de la acción instada por difamación y libelo.

Precisamente, basándose en que el demandante era un "funcionario público", los codemandados *El Vocero* y WKAQ-Radio solicitaron mediante dos (2) escritos que se dictara sentencia sumaria para desestimar la demanda, ya que para prosperar el demandante tenía que demostrar que la noticia difamatoria había sido publicada mediando malicia real, y que en este caso el demandante no podía cumplir con ese requisito puesto que de la declaración jurada suscrita por el fotoperiodista Rafael Ángel Rivera —autor del calce de la foto que es objeto de la demanda—[5] así como la declaración jurada suscrita por la periodista Julia Alemán —redactora y difusora de la noticia—[6] sur-

---

[5] Declaración jurada que acompañaba la moción presentada por *El Vocero*.

[6] Declaración jurada que acompañaba la moción presentada por WKAQ-Radio.

gía claramente que no había mediado malicia real en la difusión y publicación de la referida noticia.

La parte demandante se opuso a tales solicitudes de sentencia sumaria, mas descansó en su posición respecto a que no era un "funcionario público" y se limitó a reproducir básicamente sus alegaciones en una declaración jurada que acompañara a su escrito en oposición a que se dictara sentencia sumaria. No refutó con prueba alguna los hechos alegados y establecidos por la parte demandada ni presentó prueba sobre la existencia de malicia real por parte de los demandados. Sobre el particular, en *Méndez Arocho v. El Vocero de P.R.*, supra, págs. 873–875, señalamos que

> Las Reglas de Procedimiento Civil disponen que la parte que se opone a que se dicte sentencia sumaria en su contra viene obligada a contestar de forma detallada y específica, y *no podrá descansar sólo en las aseveraciones o negaciones que hizo en las alegaciones.* Así, está obligada a demostrar la existencia de una controversia real de hechos que amerite que se celebre un juicio en su fondo. 32 L.P.R.A. Ap. III, R. 36.5. ...
>
> Una vez la parte demandada presenta prueba que avale una de sus defensas, la parte demandante viene obligada a presentar prueba que controvierta la presentada por la parte demandada. Si la parte demandada presenta prueba de que se trata de una figura o funcionario público y que ... actuó sin malicia y sin grave menosprecio a la verdad entonces "el demandante tiene el deber de producir prueba, en la etapa de la sentencia sumaria, sobre hechos materiales respecto a los cuales no exista controversia real sustancial y que, de ser probados en un juicio plenario, establecerían la existencia de malicia real por parte del periódico en la publicación de la noticia libelosa". (Énfasis suprimido.) *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991). Véase *García Cruz v. El Mundo, Inc.*, supra, y los casos allí citados. (Énfasis en el original.)

Asimismo, en *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 281 (1991), señalamos que

> [u]na vez la parte promovente establece que no existe controversia sobre hecho material alguno, la parte promovida no puede cruzarse de brazos y descansar en sus alegaciones. Tiene que refutar los hechos alegados y sustanciar su posición con prueba ... Si se cruza de brazos, corre el riesgo de que le dicten

sentencia en su contra sin la celebración de un juicio en su fondo.

Siendo ello así, actuó correctamente el Tribunal de Primera Instancia al dictar la sentencia sumaria solicitada. Recordemos que este mecanismo procesal es especialmente deseable en aquellos casos en que se encuentra involucrada la libertad de prensa, pues la prolongación de estos pleitos puede tener un efecto paralizante o disuasivo (*chilling* effect) sobre el ejercicio de este derecho fundamental. Véanse: *Méndez Arocho v. El Vocero de P.R.*, supra; *Oliveras v. Paniagua Diez*, supra, pág. 269; *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174 (1978).

Por los fundamentos antes expuestos, concurrimos con el dictamen emitido por este Tribunal en cuanto a confirmar la sentencia recurrida que declara con lugar la sentencia sumaria solicitada.

— O —

Opinión de conformidad del Juez Asociado Señor Hernández Denton, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Por considerar que el foro de instancia aplicó correctamente la norma jurisprudencial adoptada en *Soc. de Gananciales v. López*, 116 D.P.R. 112 (1985), estamos de acuerdo con la sentencia del Tribunal que confirma la decisión del Tribunal de Primera Instancia.

En *Soc. de Gananciales v. López*, supra, este Tribunal examinó la normativa de la mayor parte de las jurisdicciones estatales de Estados Unidos, donde de manera general se ha calificado a los policías como "funcionarios públicos" a los efectos de la aplicación del criterio de malicia real en una acción por libelo y difamación. Al día de hoy ésa con-

tinúa siendo la tendencia mayoritaria.([1]) Si bien reconocimos las virtudes de tal orientación (íd., págs. 116–117), optamos por no adoptarla automáticamente en nuestro ordenamiento. Esto, debido a que tal doctrina en la que se identifica a *todo policía* como funcionario público a los efectos de una acción por libelo y difamación resulta contraria a lo que ha sido nuestra manera de atender este tipo de controversia en el cual chocan valores constitucionales de tanta importancia como son la libertad de prensa y expresión y la protección a la reputación e intimidad de todo ciudadano. En *Soc. de Gananciales*, supra, pág. 117, expresamos que

> ... desde *Torres Silva v. El Mundo, Inc.*, supra, este Tribunal ha ido desarrollando un enfoque funcional en este campo. Nuestra atención no se ha concentrado tanto en el análisis abstracto del *status* de la persona afectada *como en el contexto específico en que se da la controversia*: la naturaleza de la declaración alegadamente difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran y la relación funcional entre estos factores. (Énfasis suplido y en el original.)

Sólo después de examinar los hechos del caso a la luz de las anteriores consideraciones, es que este Tribunal pudo adjudicar la controversia:

> *La reputación de los agentes policiacos, así como la de otros funcionarios y empleados públicos, no está a la merced de todo género de ataque,* mas en las circunstancias presentes, el interés en el libre flujo de información sobre el proceder de un empleado de tan crítica importancia para el bienestar público claramente prevalece, sobre otras consideraciones, con el freno que representa la doctrina de la malicia real. (Énfasis suplido.) *Soc. de Gananciales v. López*, supra.

---

. ([1]) Los únicos casos discutidos por la doctrina en que se ha determinado que un agente del orden público no es un "funcionario público" son *Himango v. Prime Time Broadcasting*, 680 P.2d 432 (Wash. 1984), y *McCusker v. Valley News*, 428 A.2d 493 (1981), *cert.* denegado, 454 U.S. 1017. Véanse: *Smolla, Law of Defamation* (CBC) Sec. 2.26[1] (1994), y *Sanford, Libel and Privacy 2d* Sec. 7.2.3.2., pág. 270 (Sup. 1993) ("The decisions concerning law enforcement personnel are not entirely consistent and, inevitably, there are aberrant cases.").

El enfoque funcional que este Tribunal ha adoptado al momento de fijar si un demandante es funcionario público y el cual determina si le es, por lo tanto, aplicable el criterio de negligencia o el de malicia real a la acción por líbelo y difamación, es fruto de un juicioso aquilatamiento de los diferentes intereses públicos en juego. En el pasado hemos "considerado como eje crítico la importancia e interés público del asunto en controversia". *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 62 (1988). Véase, además, *González Martínez v. López*, 118 D.P.R. 190 (1987).

En el caso de autos la declaración alegadamente discriminatoria fue hecha a través de medios noticiosos de amplia difusión (radio y prensa escrita) y estuvo dirigida al público en general en el país. En la noticia se identificaba al demandante Padilla como agente del orden público y se aludía a su alegada participación en la obstrucción de una investigación criminal. Esto es, se vinculaba al aquí demandante con posibles actos de corrupción.

No debe caber la menor duda de que en tanto no se le acusara por un delito y fuera condenado por éste, a Padilla le cobija la presunción de inocencia que consagra nuestra Constitución. Sin embargo, es menester sopesar también el legítimo interés en que el público pueda juzgar el funcionamiento del Gobierno y las capacidades y aptitudes de quienes lo componen. En un momento en que la incidencia criminal constituye una de las mayores preocupaciones de nuestra ciudadanía, la confianza depositada en los funcionarios del orden público hace que una imputación de actos de corrupción y obstrucción de una investigación esté revestida de un alto interés público. Ante la declaración alegadamente difamatoria de este caso, es preciso reconocer el derecho de la ciudadanía a conocer si un agente del orden público está actuando de manera deshonesta y si carece, por lo tanto, de la cualidades necesarias para el puesto que ocupa. *Cf. Garrison v. Louisiana*, 379 U.S. 64, 77 (1964).

A la luz de estas consideraciones y del "contexto en que se da la controversia", *Garib Bazain v. Clavell*, 135 D.P.R. 475 (1994), entendemos que las circunstancias, tal como presentadas, son indicativas de que Padilla era un "funcionario público" y el criterio aplicable a su reclamación es el de malicia real. No existe razón para rechazar el enfoque funcional, abandonar el precedente de *Soc. de Gananciales v. López*, supra, y así adoptar una posición absolutista de que a los miembros de la Policía de Puerto Rico les aplica siempre la doctrina de malicia real en los casos de libelo y difamación.

Por otro lado, coincidimos con el ilustrado Tribunal de Primera Instancia en que la determinación de que Padilla era un "funcionario público" *podía hacerse sumariamente*. Recordemos que " 'el procedimiento de sentencia sumaria es "una parte integral de la protección constitucional disponible a los demandados" en esta índole de litigio' ". *Villanueva v. Hernández Class*, 128 D.P.R. 618, 643 (1991). De otro lado, ya en varias ocasiones hemos expresado que la determinación acerca de si el demandado es o no una figura pública o un funcionario público *es una cuestión de derecho* —*Garib Bazai v. Clavell*, supra; *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 269–270 (1984); *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174, 183 (1978)— susceptible, por lo tanto, de ser adjudicada sin necesidad de una vista evidenciaria.

Por estas razones estamos de acuerdo en que debe confirmarse la sentencia del Tribunal de Primera Instancia.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

"Who steals my purse steals trash-tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands;
But he that flinches from me my good name Robs me of that
which not enriches him And makes me poor indeed."

Shakespeare, *Othello*, III,
líneas 155–162.

# I

El caso ante nos tiene un carácter muy singular. Para resolverlo, los seis (6) Jueces que integran la mayoría del Tribunal invocan todos de manera específica nuestra anterior decisión en *Soc. de Gananciales v. López*, 116 D.P.R. 112 (1985), como la base de autoridad para lo que resuelven en el caso de autos. Más aún, todos expresamente reafirman que el llamado "enfoque funcional" es el que prevalece en nuestra jurisdicción para adjudicar casos como éste. Parecería que entre los integrantes de la mayoría existe una sólida comunidad de criterios respecto al asunto ante nos. Sin embargo, no se formula una opinión de mayoría aquí. Sorprendentemente, la mayoría emite su dictamen mediante una sentencia y *cuatro (4)* diversas opiniones concurrentes, lo que es, cuando menos, inusitado.

No me interesa explorar en esta opinión disidente el porqué del referido proceder de la mayoría. Lo que sí creo menester es explicar mi parecer de que lo resuelto por la mayoría en el caso de autos, no sólo no se ajusta realmente al precedente sentado en *Soc. de Gananciales v. López*, supra, sino que, además, es contrario a fundamentales postulados de nuestro ordenamiento jurídico. Con su acción aquí, la mayoría le resta vigencia a la protección que nuestra Constitución le ofrece a todas las personas contra ataques abusivos a su honra, reputación e intimidad, al sostener que la demanda de un modesto empleado público contra los que lo difamaron puede desestimarse *sumariamente* sin darle siquiera su día en corte para dilucidar el contexto específico en que ocurrió la difamación. Se reduce

a *mera retórica jurídica* una de las garantías autóctonas y primordiales de nuestra Carta de Derechos.

## II

Es menester comenzar resaltando los verdaderos hechos esenciales del caso, según surgen del expediente, incluso los escritos ante nos, y las aseveraciones no negadas de las partes.

En primer lugar, es incuestionable que el demandante, el agente Padilla, fue *difamado* por los dos medios noticiosos demandados. Éstos divulgaron *falsamente* que el agente en cuestión había obstruido una investigación del secuestro y asesinato de un médico. Padilla no había hecho tal cosa ni nada parecido. La falsa noticia fue publicada prominentemente. Uno de los medios incluso difundió un retrato del agente, como parte de un titular, que decía "Sigue Pesquisa Asesinato de Medico".

Más aún, *ambos medios le negaron acceso noticioso al agente Padilla para refutar la falsedad pregonada antes. Se negaron a rectificar la falsa noticia y a ofrecerle al público la verdad sobre lo ocurrido.*

En tercer lugar, parece bastante evidente también que la acción de los medios fue, cuando menos, *negligente. Lo divulgado sobre el agente Padilla no surgía de informe oficial alguno.* Más aún, en su declaración jurada en apoyo de la solicitud de sentencia sumaria, los periodistas que originaron lo divulgado por los medios no señalaron nada concreto que permita evaluar si el error cometido ocurrió justificadamente. No alegaron hecho concreto alguno en apoyo de lo que divulgaron. Tampoco indicaron de dónde obtuvieron la información incorrecta ni si la verificaron. Se limitaron a afirmar *estereotipadamente* que actuaron conforme "las normas de conducta mínima aceptada en la profesión de periodismo" y que no pensaron que la información difundida fuese incorrecta. No se presentó ante el tribunal

de instancia en este caso el tipo de declaración jurada que tuvo ante sí el Tribunal Supremo de Estados Unidos en *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). En ese caso, el máximo foro judicial federal aceptó que excepcionalmente, en casos como el de autos, podía ser permisible dictar sentencia sumaria. Pero allí, en las declaraciones juradas se aseveraba en detalle no sólo los esfuerzos realizados por el periodista para conseguir la información en cuestión, sino, además, las varias fuentes confiables en las que había descansado para obtenerla. En el caso ante nos, no hubo tales declaraciones juradas.

En cuarto lugar, parece bastante claro que el demandante Padilla, al momento de ocurrir los incidentes que dieron lugar a este pleito, no tenía prominencia pública alguna. Aunque no surge de modo alguno del expediente cuáles eran las funciones concretas suyas, tal parece que el demandante era un mero agente de la Oficina del Fiscal Especial Independiente, un empleado público de modesta jerarquía. Su trabajo, además, *no parece que tenía nada que ver* con el trágico secuestro y la muerte del médico que provocó las noticias. *No hay nada en el expediente del caso que permita concluir que, en efecto, la labor oficial de Padilla estaba relacionada de modo alguno con el tema central de lo publicado.*

Finalmente, es importante resaltar que el foro de instancia *no decidió* si el agente Padilla era un funcionario público o no, conforme la normativa de *Soc. de Gananciales v. López*, supra. El tribunal a quo sólo adjudicó si había mediado malicia real o no en lo publicado; y en cuanto al asunto del carácter del agente como funcionario público, se limitó a *asumir* que lo era. No es correcta, pues, la afirmación de la mayoría de que el tribunal de instancia determinó que el agente Padilla era un funcionario público.

A la luz de estos hechos, no procedía que se dictara *sentencia sumaria,* como lo hizo el foro de instancia. No podía desestimarse la acción del agente sin siquiera considerar

la cuestión de si dicho agente era un "funcionario público" o no, para fines de la acción judicial incoada por él. Es decir, no podía asumirse jure et de jure que como Padilla era un agente público, por lo tanto necesariamente era también "funcionario público" para fines de una acción de libelo y difamación, que fue lo que hizo el tribunal. Lo procedente era que el foro de instancia celebrara una vista evidenciaria para entonces decidir, conforme los hechos concretos del caso, si aplicaba a éste la doctrina de malicia real que le da inmunidad a la prensa por actos meramente negligentes cuando el difamado es un "funcionario público" según los criterios jurídicos pertinentes. El tribunal de instancia erró al actuar como lo hizo y la mayoría de este Foro ahora aprueba tal actuación, dando al traste con nuestra jurisprudencia anterior y con otras fundamentales normas de derecho constitucional, sin justificación jurídica alguna. Veamos.

## III

A. *La norma del "enfoque funcional"*

1. *El requisito de prueba sobre los hechos particulares del caso*

En *Soc. de Gananciales v. López*, supra, pág. 117, resolvimos que los agentes del orden público no son siempre, y en todo caso, "funcionarios públicos" para fines del derecho de difamación. Reconocimos entonces que "[l]a reputación de los agentes policíacos, así como la de otros funcionarios y empleados públicos, no está a la merced de todo género de ataque ...". Indicamos, además, que a partir de *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415 (1977), prevalecía en nuestra jurisdicción la norma del "enfoque funcional", y que conforme dicha norma, la cuestión de si un empleado público es también "funcionario público" para fines de la ley de difamación *debía determinarse caso por caso*, de-

biendo tomarse muy en cuenta en cada caso particular *el contexto específico* en que se daba la controversia. En otras palabras, en *Soc. de Gananciales v. López,* supra, reiteramos la norma de *Torres Silva v. El Mundo, Inc.,* supra, de que la determinación judicial de si una persona es o no un "funcionario público" en casos como el de autos no depende meramente de su condición de empleado público, sino que descansa más bien *en los hechos particulares del caso,* y que se hará tal determinación al sopesar elementos tales como: la naturaleza de la publicación alegadamente difamatoria; el auditorio a que se dirige la noticia; los intereses que se sirven o vulneran; la relación entre estos factores, y otros.

El claro tenor de nuestros precedentes, pues, presupone que la cuestión de si una persona es "funcionario público" o no, sólo se puede adjudicar luego de *pasar prueba* sobre los hechos pertinentes del caso particular. *Dicha cuestión no puede adjudicarse sumariamente,* como lo hizo el foro de instancia, sobre todo cuando las alegaciones del demandado en las declaraciones juradas son estereotipadas y no aducen hechos pertinentes. Por ello, la mayoría del Tribunal, al validar la decisión del foro a quo, contraviene crasamente la clara normativa sobre el "enfoque funcional" que estaba ya establecida en nuestra jurisprudencia. La contraviene porque al aplicar dicha normativa no se le da vigencia a lo que realmente ésta presupone y ordena. No basta con citar retóricamente a *Soc. de Gananciales v. López,* supra. Lo sustancial es hacer valer lo que allí se estableció.

En *Soc. de Gananciales v. López,* supra, el foro de instancia *no* dictó sentencia sumaria. Por el contrario, sus determinaciones se hicieron luego del juicio correspondiente, en el cual *se pasó prueba* sobre el contexto de hechos dentro del cual ocurrió la difamación allí dilucidada. Fue con arreglo a esa prueba que este Tribunal resolvió que la cuestión de si un empleado gubernamental es "fun-

cionario público" o no, para fines de la ley de difamación, sólo puede decidirse *caso a caso*, según las circunstancias.

*Soc. de Gananciales v. López, supra*, pues, exige inexorablemente que exista una clara base evidenciaria para decidir la cuestión ante nos. No se trata de un asunto que puede resolverse a priori, *sin base en prueba alguna*. Se necesita una vista evidenciaria para adjudicar la cuestión, o al menos declaraciones juradas en las cuales se aseveran detalladamente determinados *hechos*, como las de *Anderson v. Liberty Lobby, Inc., supra*. Aquí no hubo ni uno ni lo otro. El tribunal a quo sencillamente no consideró el asunto. Se limitó a *asumir* lo que tenía que adjudicar. Constituye una clara e innegable distorsión de lo resuelto en *Soc. de Gananciales v. López*, supra, concluir que tal proceder es conforme a lo que allí se estableció.

## 2. *El requisito de conducta oficial real.*

Es menester resaltar que la mayoría parece pensar que como la actuación falsamente imputada al agente Padilla se refería a conducta oficial, ello justifica la determinación judicial sumaria de que dicho agente era un "funcionario público" a los fines de la acción de libelo. *Tal noción constituye un craso error de lógica*. Es el tipo de razonamiento que asume en la conclusión precisamente lo que hay que probar para llegar a ésta. Lo afirmado por la mayoría significa en efecto que la falsa imputación de conducta oficial de por sí siempre inmuniza al que difama. Se protege así al que falsamente impute que medió conducta oficial, con sólo imputarlo, aunque tal no sea el caso. Lo lógico sería aplicar la inmunidad una vez se haya *establecido* que la falta imputada estaba de hecho relacionada de alguna manera razonable con el desempeño de las particulares funciones oficiales del agente, cosa que aquí no ocurrió. Para requerir malicia real, era necesario dilucidar antes si el reportaje en cuestión estaba relacionado con las funciones concretas de

Padilla como agente del F.E.I., lo que a su vez hacía necesario examinar cuáles eran tales funciones, cosa que no se hizo, al desestimar la acción sumariamente. Así, mediante un razonamiento ilógico, la mayoría, en efecto, abandona el enfoque funcional que estaba vigente en nuestra jurisdicción sin justificación alguna.

Sobre este particular, debe resaltarse también que conforme la doctrina del Tribunal Supremo federal, para que aplique el requisito de malicia real no basta que la publicación haya imputado conducta oficial al empleado público. Es necesario, además, establecer que se trata de conducta oficial de envergadura, *independientemente de lo publicado*. El Tribunal Supremo federal lo explicó de la siguiente forma en *Rosenblatt v. Baer*, 383 U.S. 75 (1966):

> It is suggested that this test might apply to a night watchman accused of stealing state secrets. But a conclusion that the *New York Times* malice standards apply could not be reached merely because a statement defamatory of some person in government employ catches the public's interest; that conclusion would virtually disregard society's interest in protecting reputation. The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.

Ello significa que la cuestión de inmunidad sólo puede adjudicarse luego de dilucidarse cuál era concretamente la alegada conducta oficial y qué importancia tenía. No basta con sólo imputar que hubo conducta oficial, como erróneamente piensa la mayoría de nuestro Foro.

B. *La definición federal sobre "funcionario público"*

Como se sabe, en nuestra jurisdicción, en casos como el de autos, estamos obligados a dar vigencia a las interpretaciones del Tribunal Supremo de Estados Unidos que delimitan el alcance mínimo de la Primera Enmienda de la Constitución federal. *Clavell v. El Vocero de P.R.*, 115

D.P.R. 685 (1984). Por ello, debemos examinar las decisiones federales pertinentes.

En *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), el máximo foro federal resolvió que no es difamatoria la publicación de un informe falso o de comentarios injustificados en relación con la conducta oficial de un funcionario público, a menos que éstos hayan sido hechos mediando malicia real. Sin embargo, en aquella ocasión el referido foro advirtió que, por no estar propiamente ante sí la oportunidad para hacerlo, dejaba sin resolver el alcance del concepto "funcionario público" en relación con los diferentes niveles o clasificaciones de empleados gubernamentales.([1]) Allí, el Supremo federal resolvió únicamente que, en ese caso, el puesto del demandante como miembro electo de la junta de gobierno de la ciudad de Montgomery, Alabama, lo convertía en "funcionario público".

Posteriormente en *Rosenblatt v. Baer*, supra, el Tribunal Supremo federal resolvió que el referido término debe aplicar, como mínimo, a aquellos empleados públicos que tengan, o aparenten tener, un grado de responsabilidad o control sustancial sobre el manejo de los asuntos gubernamentales. Allí se señaló que esa definición respondía a los intereses reconocidos en *New York Times Co. v. Sullivan* de proteger el debate vigoroso de controversias públicas y sobre las personas que se encuentran en posiciones de influencia en relación con esas controversias. Por otro lado, en *Rosenblatt v. Baer*, supra, el Supremo federal también advirtió que *el interés público general en las calificaciones de todos los empleados gubernamentales, por sí solo, no era suficiente para que se aplicara la clasificación de "funcionario público" a un individuo en particular.* Aña-

---

([1]) En *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 esc. 23 (1964), el Tribunal Supremo federal se expresó de la manera siguiente:

"We have no occasion here to determine how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of this rule, or otherwise to specify categories of persons who would or would not be included."

dió que, por el contrario, para que se imponga la referida clasificación, el puesto que el individuo en cuestión ocupe tiene que estar revestido de tal importancia real o aparente como para que exista un interés público particular en las calificaciones y ejecutorias concretas del servidor público que lo ostenta. Finalmente, el Supremo federal en *Rosenblatt v. Baer*, supra, indicó que el puesto del empleado gubernamental debe ser de tal naturaleza que el individuo que lo ocupe esté sujeto al escrutinio público como regla general *y no como resultado de la información alegadamente difamatoria.*

Más recientemente, en *Hutchinson v. Proxmire*, 443 U.S. 111, 119 esc. 8 (1979), el Tribunal Supremo de Estados Unidos expresó que aunque ese Tribunal no había provisto una definición definitiva de lo que era un "funcionario público", *era claro que esta categoría no incluía a todos los empleados públicos.*

En resumen, bajo los criterios federales aplicables, un empleado gubernamental tiene que considerarse "funcionario público", sujeto a la norma de malicia real de *New York Times Co. v. Sullivan*, supra, en casos de libelo, *si el empleado ocupa un puesto de suficiente importancia pública, de los que tienen o aparentan tener sustancial responsabilidad o control sobre el manejo de los asuntos gubernamentales, de modo tal que esté constantemente sujeto al escrutinio público.* No basta sólo ser empleado gubernamental para que surja la obligación de aplicar la norma de malicia real.

Lo anterior significa que en nuestra jurisdicción, en todo caso de libelo instado por un "empleado público" es *imprescindible* realizar una evaluación judicial concreta en cuanto a si el empleado demandante es o no un "funcionario público" según la referida definición federal. Es decir, salvo lo que se indicará más adelante, para cumplir con la obligación de dar vigencia a las decisiones pertinentes del Tribunal Supremo federal, en cualquier caso de libelo

donde el demandante sea un empleado público, es judicialmente indispensable examinar a fondo las características concretas y específicas del cargo en cuestión y su particular grado de ingerencia en los asuntos públicos para entonces decidir si aplica o no el requisito de malicia real.

Es evidente que la referida evaluación del cargo y las ejecutorias del empleado público demandante requieren que consten ante el foro judicial los hechos correspondientes. *No se trata de un asunto que pueda adjudicarse propiamente de modo sumario*, o a base de declaraciones juradas estereotipadas. Por ello, el *foro* a quo, al desestimar el caso del agente Padilla sin entrar a determinar y considerar los hechos particulares sobre su cargo y sus ejecutorias oficiales, cometió un craso error que la mayoría de este Tribunal desacertadamente ahora convalida.

## C. *Las exigencias del Derecho a la reputación y a la intimidad bajo la Constitución del Estado Libre Asociado*

Las normas del Tribunal Supremo federal sobre el requisito de malicia real en casos de difamación de funcionarios públicos, claro está, no requiere una evaluación judicial de los hechos particulares relativos al cargo y a las ejecutorias del empleado público que demanda si en la jurisdicción concernida se ha establecido la norma de que los empleados gubernamentales son siempre "funcionarios públicos" a los fines de la ley de difamación. En tal situación, no es necesario examinar los hechos concretos de cada caso. Basta con que se establezca que el demandante en el caso en cuestión era en efecto un empleado público.

Muchas jurisdicciones estatales norteamericanas,[2] pero no todas,[3] han determinado que los agentes del or-

---

[2] Véanse: *Soc. de Gananciales v. López*, 116 D.P.R. 112, 116–117 (1985), y casos allí citados; *Sanford, Libel and Privacy 2d* Sec. 7.2.3.2., págs. 267–272 (Sup. 1994), y casos allí citados; *Smolla, Law of Defamation*, (CBC) Sec. 2.26, págs. 2-91–2-92 (Sup. 1994), y casos allí citados.

[3] En dos (2) jurisdicciones se ha resuelto expresamente que ser agente del orden público, por sí solo, no convierte a un individuo en "funcionario público" para fines de la ley de difamación. En ambas, la determinación debe hacerse caso a caso,

den público, como regla general, son "funcionarios públicos" a los fines de la norma de *New York Times Co. v. Sullivan*, supra. En Puerto Rico hasta ahora habíamos rechazado tal postura, y habíamos optado más bien por decidir cada caso según sus méritos particulares. La doctrina que hasta ahora habíamos sustentado era la única que puede válidamente adoptarse en una jurisdicción como la nuestra, en la cual el derecho a la reputación y a la intimidad son preeminentes.

Según hemos resuelto reiteradamente en Puerto Rico, el derecho de "toda persona a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar" (Art. II, Sec. 8 de la Carta de Derechos de nuestra Constitución, L.P.R.A., Tomo 1), junto con la garantía de la inviolabilidad de la dignidad del ser humano (Art. II, Sec. 1, Const. E.L.A., *supra*) son normas fundamentales que gozan de la más alta jerarquía constitucional. Se trata de derechos que no han sido reconocidos en muchas jurisdicciones norteamericanas con el alcance y la jerarquía que tienen en Puerto Rico. *Pueblo v. De León Martínez*, 132 D.P.R. 746 (1993); *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 59–62 (1986); *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328, 340 (1983); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978); *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436 (1975). De ellos surge la fuente principal de la acción por libelo en nuestra jurisdicción.[4]

---

dependiendo del grado de autoridad que tenga el agente o de la importancia particular de su cargo. Véanse: *Himango v. Prime Time Broadcasting*, 680 P.2d 432 (Wash. 1984); *McCusker v. Valley News*, 428 A.2d 493 (1981).

[4] La acción por difamación o libelo en nuestra jurisdicción tiene (3) fuentes: la Sec. 8 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1; la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902 (32 L.P.R.A. sec. 3141 *et seq.*) y el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141. Véanse: *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315 (1994); *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (1994); *Giménez Álvarez v. Silén Maldonado*, 131 D.P.R. 91 (1992); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *González Martínez v. López*, 118 D.P.R. 190 (1987); *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685 (1984); *Oliveras v. Paniagua Diez*, 115 D.P.R. 257 (1984); *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415 (1977); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734 (1975); *Romany v. El Mundo*, 89 D.P.R. 604 (1963).

Por el rango y la jerarquía especial que tienen estos derechos fundamentales en nuestro propio ordenamiento jurídico, no podemos adoptar indiscriminadamente en Puerto Rico la posición asumida por muchas de las jurisdicciones estatales de que todos los policías son siempre "funcionarios públicos" para efectos de una acción por libelo. La reputación individual de los miembros ordinarios de la Policía de Puerto Rico está comprendida entre aquellas que nuestra Constitución protege, y merece respeto, conforme los referidos principios constitucionales. Para que las disposiciones fundamentales de nuestra Constitución que protegen a *toda* persona contra ataques abusivos a su honra, reputación e intimidad tengan algún sentido real, y no sean mera retórica jurídica, no se puede extender la salvaguarda de la doctrina de la malicia real *automáticamente* a todos los casos donde esté involucrado cualquier agente del orden público, como lo hizo el foro de instancia en este caso.

Desde la opinión del Tribunal Supremo federal en *New York Times Co. v. Sullivan*, supra, reiteradamente hemos reconocido que al adjudicar casos que surgen de una acción por difamación y libelo, procede *establecer un balance* entre los intereses protegidos por la libertad de expresión y de prensa, y el interés del ciudadano de proteger su dignidad, reputación e intimidad. Véanse: *Garib Bazain v. Clavell*, 135 D.P.R. 475 (1994); *Giménez Álvarez v. Silén Maldonado*, 131 D.P.R. 91 (1992); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 268 (1984); *Clavell v. El Vocero de P.R.*, supra; *Torres Silva v. El Mundo, Inc.*, supra. En diversos contextos hemos insistido en que debe mantenerse un delicado balance entre estos dos (2) intereses preeminentes, haciendo hincapié en que el grado de responsabilidad re-

---

Para una explicación de la interacción entre estas fuentes y por qué la Ley de Libelo y Calumnia ha perdido gran parte de su importancia en relación con las otras dos (2) fuentes mencionadas, véase *Ojeda v. El Vocero de P.R.*, supra, pág. 326 esc. 7.

querido para establecer la causa de acción varía de acuerdo con la *condición particular* de la persona afectada. *Méndez Arocho v. El Vocero de P.R.*, supra, págs. 876–878; *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 61–62 (1988); *González Martínez v. López*, 118 D.P.R. 190, 192–193 (1987); *Oliveras v. Paniagua Diez*, supra, pág. 262; *Pueblo v. Olivero Rodríguez*, 112 D.P.R. 369 (1982); *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174 (1978); *Torres Silva v. El Mundo, Inc.*, supra.

En vista de las numerosas decisiones nuestras, aludidas antes, en las cuales hemos afirmado una y otra vez lo imperioso de la tarea judicial de balancear los derechos fundamentales contrapuestos en los casos de difamación y libelo, es nada menos que *desconcertante* que la mayoría ahora, de un plumazo, decida que no es necesario entrar a considerar concretamente las circunstancias particulares de la persona difamada en el caso de autos. Equivale a dejar sin efecto *sub-silentium* no sólo una larga serie de precedentes, sino, además, el fundamental esquema normativo que reconoce que en estos casos hay *dos* derechos básicos contrapuestos *que debemos armonizar.* Equivale, pues, a echar a un lado la garantía constitucional que le asegura a toda persona que su reputación, intimidad y honra están protegidos. Con la insólita decisión en este caso, se afirma que sólo la libertad de prensa tiene vigencia y ésta se interpreta aquí más allá de lo que requiere la Constitución federal, sin justificación válida alguna.

## D. *Las exigencias de la libertad de prensa*

La normativa establecida en *New York Times Co. v. Sullivan, supra*, y su progenie persigue hacer viable el debate público vigoroso sobre los asuntos colectivos. Se reconoce en ella un fundamental interés del más alto rango constitucional, que nosotros compartimos plenamente, que consiste en proteger la crítica de la conducta oficial. El libre escrutinio público de la labor del Gobierno es uno de los

fines de la libertad de expresión y, como tal, es elemento esencial de una sociedad democrática.

En *New York Times Co. v. Sullivan*, supra, el Supremo federal indicó que para no desalentar la crítica legítima de la conducta oficial, era necesario tolerar incluso los errores candorosos cometidos al expresar dicha crítica (*erroneous statements honestly made*, íd., pág. 278). No es, pues, que exista valor intrínseco alguno que proteger en la crítica falsa, sino que para hacer posible la crítica legítima es menester darle un margen de error (*breathing space*) a los que formulan la crítica gubernamental.

A la luz de estos propósitos de la normativa sobre la malicia real, queda claro por qué el Tribunal Supremo de Estados Unidos no la ha extendido a empleados gubernamentales de poca jerarquía. De ordinario, cuando se trata de tales empleados, las labores que éstos realizan no están revestidas de un legítimo interés público. Lo mismo puede ocurrir aun cuando se trata de agentes del orden público. Es cierto que muchos de estos agentes, quizás la mayoría, desempeñan labores gubernamentales sustanciales. Tal es el caso de los policías que intervienen a diario con los ciudadanos o de los que se enfrentan a los delincuentes. Pero resulta que los agentes del orden público no tienen *todos* las mismas funciones ni comparten *todos* labores gubernamentales de igual importancia pública. Así lo hemos reconocido nosotros mismos, aunque en otro contexto. Véase *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991). Existen agentes del orden público que realizan labores que no aparejan una responsabilidad pública significativa, como ocurre con los que desempeñan labores corrientes de oficina, tareas administrativas menores, investigaciones rutinarias o servicios de transportación y custodia comunes. Extender la aplicación de la norma de malicia real a estos últimos, que realmente no son personas en posiciones de alguna autoridad o influencia respecto de la cosa pública, le da un poder injustificado a los que se dedi-

can a la crítica de la conducta oficial. Les permite difamar por negligencia aun a los más humildes empleados públicos. Se crea así un grave riesgo de exponer las reputaciones y la intimidad, *de los que propiamente sólo son ciudadanos comunes y corrientes*, a los excesos de la curiosidad morbosa, de la chismografía, de la patraña, y del comercialismo. La noticia falsa que por negligencia se divulga sobre tales empleados de escasa jerarquía *en nada sirve los intereses democráticos protegidos por la libertad de expresión y de prensa*. Las ejecutorias de estos empleados menores del Gobierno no involucran el manejo o la conducción de los asuntos de la colectividad, por lo que la divulgación de noticias sobre ellos no tiene nada que ver realmente con el libre escrutinio público de la labor gubernamental.

Al darle inmunidad a la difamación de tales empleados de menor jerarquía, como lo hace la mayoría en el caso de autos, no se está viabilizando el vigoroso debate público sobre los asuntos colectivos. Lo único que se viabiliza es la promoción de las muy poderosas y lucrativas empresas privadas que controlan los medios de comunicación social. Se da lugar también a que los hijos, cónyuges y otros familiares y amigos de los difamados sufran la dolorosa y abrumadora experiencia de ver a un ser querido humillado y vejado no sólo falsa e impunemente, sino, además, sin ningún remedio eficaz para rescatar su buen nombre y reputación. Como no puedo hacerme parte de este resultado tan injusto y contrario a nuestro propio derecho, disiento.