STATE OF MAINE                                      SUPERIOR COURT
YORK, SS.                                           Civil Action
                                                    Docket No. CV-13-148


BRUCE PLANTE and
DENNIS PLANTE,

                Plaintiffs,

                                                    **ORDER GRANTING**
v.                                                  **DEFENDANT'S MOTION FOR**
                                                    **SUMMARY JUDGMENT**

RONALD P. LONG,

                Defendant.

Before the court is Defendant's motion for summary judgment in this defamation

action. For the following reasons, the motion is granted.

## I. Facts

Plaintiffs Dennis and Bruce Plante have been involved in town services or

government in Berwick for a number of years. Dennis Plante is chief of the Berwick

Fire Department. (Supp. S.M.F. ¶ 1) Bruce Plante is the assistant chief, and served on

the Berwick Board of Selectmen until 2010. (*Id.* ¶ 2.)

Defendant Ronald Long is a resident of Berwick. (*Id.* ¶ 5.) At times over the

years he has been critical of the Fire Department and its leaders. (*Id.* ¶ 6.) In 2007, for

example, Defendant opposed a proposal for a publicly funded building that would

have housed the Fire Department. (*Id.* ¶ 9.) In 2008, he and other Berwick residents

questioned alleged inconsistencies in the Fire Department's application for a federal

grant. (*Id.* ¶ 7.) These and other instances contributed to conflict between the parties.

On one occasion, Bruce Plante filed a complaint against Defendant with the Berwick

Police Department. (*Id.* ¶ 15.)

1

The particular statements and events at issue in this case arise in that context, beginning with an incident on October 27, 2011. Defendant and his wife were jogging on Worster Road in Berwick when Bruce Plante drove past them. (*Id.* ¶ 11.) According to Plante, Defendant smirked and waved to him; Plante perceived the actions as intentionally mocking. (Pls.' Addt'l S.M.F. ¶ 3.) Defendant disputes this interpretation. (Supp.'g S.M.F. ¶ 11.) In any event, after passing by Defendant, Bruce Plante pulled his truck over to the side of the road approximately 150 feet away and got out of his vehicle. (*Id.* ¶¶ 12-13; Pls.' Addt'l S.M.F. ¶ 7.) According to Defendant, Plante then shouted at Defendant: "Hey, do you want some of this? Are you fucking looking for me?" (Supp.'g S.M.F. ¶¶ 12-13.) Defendant felt threatened, but continued jogging.

Bruce Plante has a different version of what was spoken. He maintains that he was merely asking Defendant if he wanted to speak with him, and only raised his voice because of the distance between them. (Opp. S.M.F. ¶¶ 12-13; Pls.' Addt'l S.M.F. ¶ 9.) According to Plante, when Defendant replied that he was only waving, he (Plante) merely yelled, "Don't bother;" and then got back in his truck and drove away. (Pls.' Addt'l S.M.F. ¶ 8.)

The following day, October 28, Defendant sent an email to Chief Timothy Towne and Captain Jerry Locke of the Berwick Police Department. (Supp.'g S.M.F. ¶ 14; Pls.' Addt'l S.M.F. ¶ 12.) In the email, Defendant alleged that he was being harassed by Bruce Plante, and he reported what he heard Plante yell at him during the October 27 incident ("Hey, do you want some of this? Are you fucking looking for me?"). (Pls.' Addt'l S.M.F. ¶ 13.) In addition, Defendant's email stated, in part, as follows:

> I have heard in the past of several people that he has tried to intimidate by this very behavior. It is my understanding that he has done this and similar things to Gary Day local business owner, former police officer, and former selectmen. Peg Wheeler local business owner, former selectmen, school board member, etc. as well as Thomas Lavigne local business

2

owner, former police officer, and former selectmen. I ask that you contact each and every person that I have named to further your investigation. But never in the 22 years I have been in Berwick has this ever happened.

This person is clearly mentally unstable and I fear for what he is capable of doing. As this is a very isolated area I firmly believe that he was trying to get me alone. This harassment has to stop. This along with position on the fire dept makes me worry about my safety and that of my family. Not only if he looses control again, but if for any reason my family or I need emergency help. Mr. Plante is in a position to make me worry about the safety of my family and myself.

(*Id.* ¶ 14.)

That same day, October 28, 2011, Defendant also sent an email to Mark Gagnon[1] with a copy to Dana Lajoie of the South Berwick Police Department. (Pls.' Addt'l S.M.F. ¶ 15.) This email was substantially similar to the email sent to Chief Towne and Captain Locke, and recounted in material part the October 27 incident, including the statements that Bruce Plante allegedly had made ("Hey, do you want some of this? Are you fucking looking for me?"), as well as Defendant's statements that he believed Bruce Plante was "clearly mentally unstable," and had done "this and similar things to several other people in town that he has tried to intimidate by this very behavior." (*Id.* ¶¶ 15-16.)

On April 5, 2012, Defendant filed another complaint with the Berwick Police Department. (*Id.* ¶ 19.) In the complaint, Defendant again alleged that he was being harassed by Bruce Plante, and further stated: "I would also like it known that I feel very uncomfortable with [Bruce] coming to my house should there be a need for the [Fire Department] to come. I would like his employer notified that he is not allowed to make contact with me. And I would like to make the Town of Berwick notified of this

---

[1] In addition to serving as Assistant Chief of the Fire Department, Bruce Plante is privately employed as a delivery driver for Mr. Gagnon's company, Gagnon Propane. (*Id.* ¶ 1.) He was driving a Gagnon Propane truck at the time of the October 27 incident. (*Id.* ¶ 2.)

concern and that I do not want [Bruce] on or around my property in any capacity." (*Id.* ¶ 20.)

On April 24, 2012, Defendant sent an email to members of the Berwick Board of Selectmen and others that read in part: "There is much more to that story as well as other abuses by Bruce and Dennis . . . following people, harassing people . . . ." (*Id.* ¶ 21.)

On May 23, 2012, Defendant sent an email to Chief Towne (with a copy to Bart E. Haley), which stated that Bruce and Dennis Plante "continually lie to further 'Their Cause' at any cost" and that they, "with the help of more than a few have driven this town into the ground and lied, followed, intimidated, and harassed people to get 'Their Cause' pushed through . . . at any cost." (*Id.* ¶ 22.)

On March 30, 2013, Defendant sent another email to members of the Board of Selectmen, as well as other individuals. (*Id.* ¶ 34.) The email stated that a report prepared by independent consultant Municipal Resources, Inc. (MRI) contained the following statements in its evaluation of the Fire Department: "Several [firefighters] cite Bruce as hostile, belligerent and bad for community relations" and "Area fire chief cites Bruce 'impossible to work with.'" (*Id.*; Supp.'g S.M.F. ¶ 35.) Defendant admits that he was referring to a draft version of the MRI report and never read the final version. (Pls.' Addt'l S.M.F. ¶¶ 35, 37; Def.'s Reply S.M.F. ¶¶ 35, 37.)

Plaintiffs deny that they have harassed Defendant and others, as Defendant alleges.

Defendant states that, on one occasion, he witnessed Dennis Plante following him at a close distance in a vehicle with a Fire Department insignia as Defendant drove to New Hampshire. (Supp.'g S.M.F. ¶ 38.) Defendant also states that he has witnessed Bruce Plante in his vehicle making gestures, banging the steering wheel, and hollering

4

at Defendant. (*Id.* ¶¶ 10, 16.) Chief Towne and Captain Locke state that they have both witnessed similar behavior by Bruce Plante, with Captain Locke alleging that he has witnessed this behavior on "hundreds" of occasions. (*Id.* ¶¶ 27-28.)

In addition, Ms. Wheeler states that, after she opposed a proposed pay increase for a Fire Department employee, Bruce Plante approached her in an intimidating way, including hollering and pointing at her, and later called her on the phone to state that she had better hope her house does not catch on fire. (*Id.* ¶¶ 19-20.) Ms. Wheeler also testified that Bruce Plante has followed her, given her "the finger," and leapt out at her from the side of the road or from his vehicle. (*Id.* ¶¶ 21-22.) Mr. Lavigne has testified that Bruce Plante glares at him when he sees him in traffic, and that, on one occasion, he jumped out in front of Mr. Lavigne's car and gave him the finger. (*Id.* ¶¶ 24-25.)

Bruce Plante denies that any of these events occurred. (Opp. S.M.F. ¶¶ 16, 19-22, 24-25, 27-28.)

Plaintiffs filed a complaint alleging eight counts of libel and one count of punitive damages.[2] The parties have since entered into a stipulation of dismissal as to the libel claims in count I and count VII.

---

[2] The eight libel counts in the complaint pertain to the following alleged actions by Defendant: An August 19, 2008 letter to the Department of Homeland Security (Count I); the October 28, 2011 emails to Chief Towne/Captain Locke (Count II), and Mark Gagnon/Chief Lajoie (Count III); the April 5, 2012 written complaint to the Berwick Police Department (Count IV); the April 24, 2012 email to the Board of Selectmen (Count V); the May 23, 2012 email to Chief Towne and Mr. Haley (Count VI); a June 7, 2012 email to Jeff Libby (Count VII); and the March 30, 2013 email to the Board of Selectmen (Count VIII). Count IX sets out a claim for punitive damages based on the conduct alleged in support of the libel counts.

5

## II. Conclusions

Defendant seeks summary judgment with respect to the remaining counts on several grounds, but primarily on the ground that Plaintiffs, as public officials, have failed to meet their threshold burden of proof that he acted with actual malice toward them. Defendant also maintains many of the statements in issue were statements of opinion, not fact, and therefore are not actionable. Finally, he argues that his statements are protected by a conditional privilege.[3] (Def.'s Mot. Summ. J. 11-20.)

### A. Summary Judgment Generally

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact . . . and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). "To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842. "Summary judgment is appropriate even when concepts such as motive or intent are at issue, . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821.

### B. Summary Judgment Involving a Public Official Defamation Claim

Generally speaking, a plaintiff who brings a defamation action must prove that the defendant made statements of fact that were false, defamatory, and not privileged. *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083; *Schoff v. York Cnty.*, 2000 ME 205, ¶ 9

---

[3] Except for Count IV in Section C(2), below, because the motion is decided on the first ground, the court does not address or rely upon the other latter two grounds advanced in support of the motion.

6

n.3, 761 A.2d 869; *see also Lester v. Powers*, 596 A.2d at 65, 69 (Me. 1991). Plaintiffs who serve as public officials, however, are held to a higher standard in defamation actions.

A public official "must, to succeed in this action, prove that the allegedly defamatory statements were in fact false and that the statements were made with 'actual malice,'[4] that is, that the statements were made with knowledge of their falsity or with reckless disregard as to whether they were true or false." *Beal v. Bangor Publ'g Co.*, 1998 ME 176, ¶ 6, 714 A.2d 805 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964)). This limitation on defamation actions by public officials is rooted in principles of free speech protected by the First Amendment. *New York Times Co.*, 376 U.S. at 283; *Roche v. Egan*, 433 A.2d 757, 762 (Me. 1981). It extends broadly to comments made about public officials. *See Pendleton v. City of Haverhill*, 156 F.3d 57, 67 (1st Cir. 1998) (constitutionally required showing in defamation action tied to plaintiff's status); *Buendorf v. Nat'l Pub. Radio, Inc.*, 822 F. Supp. 6, 12 (D.D.C. 1993) (constitutional requirements "include almost any comment regarding a public official.") *See also Garrison v. La., 379 U.S. 64, 77 (1964)* (statements that do not directly impugn official conduct are nonetheless protected); Restatement (Second) Torts § 580A cmt. h. (private communications are also protected).

Plaintiffs are public officials.[5] Therefore, as a predicate for maintaining this action they must make a threshold showing that Defendant made the statements in

---

[4] Because the Law Court has moved away from using the term "actual malice" in defamation cases to avoid confusion, *see Lester*, 596 A.2d at 65, it is only used herein as an occasional shorthand reference for "knowledge or disregard of falsity." *See Michaud v. Inhabitants of Livermore Falls*, 381 A.2d 1110, 1113 (Me. 1978).

[5] Plaintiffs appear to concede that they are public officials. (Pls.' Opp'n to Mot. Summ. J. 1 n.1, 7-16.) Even if they do not so concede, it is clear that as the chief and assistant chief of a municipal fire department they are public officials. *See Ballard*, 2005 ME 86 at ¶ 15 (acting president of local union a public official); *Michaud*, 381 A.2d at 1112-13 (Director of State Bureau of Maine's Elderly a public official); *Roche*, 433 A.2d at 762 (police officer a public official

issue with knowledge of their falsity or with reckless disregard as to whether they were true or false. *Beal*, 1998 ME 176 at ¶ 6. And, they must make this showing by a heightened evidentiary standard—clear and convincing evidence. *New York Times Co.*, 376 U.S. at 254, 279-80, 285-86; *Beal*, 1998 ME 176 at ¶ 10; *Lester*, 596 A.2d at 69.

"Knowledge or disregard of falsity is a purely subjective state of mind," and "there must be *sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Lester*, 596 A.2d at 71 (emphasis added). Even evidence that demonstrates the alleged defamer's "factual premises were objectively false, or even that no reasonable person could have believed them to be true, does not show that [he or she] knew or disregarded their falsity." *Id.* Plaintiffs may rely on inference to prove Defendant subjectively entertained serious doubts as to the truth of the statement. *Bose Corp. v. Consumers Union*, 692 F.2d 189, 196 (1st Cir. 1982); *see also Levesque v. Doocy*, 560 F.3d 82, 90 (1st Cir. 2009) ("Because direct evidence of actual malice is rare, it may be proved through inference, and circumstantial evidence."). However, personal animosity alone does not establish actual malice, but may, along with other evidence, support such an inference; provided, however, that additional evidence amounts to' more than mere "unsupported speculation" as to the critical question of whether Defendant, in fact, knew his statements were false, or made the statements with reckless disregard of their truth or falsity. *See Michaud*, 381 A.2d at 1113; *Lester*, 596 A.2d at 72.

Thus, in opposing summary judgment a plaintiff must generate sufficient prima facie evidence to establish a disputed material fact. *Petit v. Key Bank of State*, 688 A.2d 427, 430 (Me. 1996). Specifically in this instance, which involves a public official

because police are "vested with substantial responsibility for the safety and welfare of the citizenry in areas impinging most directly and intimately on daily living").

8

defamation claim, in order to avoid summary judgment Plaintiffs must put forward sufficient prima facie evidence to generate a genuine issue of material fact with respect to whether Defendant subjectively knew the falsity of, or recklessly disregarded the falsity of, the statements in question; and that showing must be by clear and convincing evidence. *Michaud*, 381 A.2d at 1114; *Lester*, 596 A.2d at 71; *see also Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99, ¶ 3, 82 A.3d 101 (applying clear and convincing evidence standard on appeal from a summary judgment).

### C. The Remaining Defamation Counts

Based on review of the summary judgment record, the court concludes that Plaintiffs have not produced sufficient prima facie record evidence to demonstrate clearly and convincingly that Defendant subjectively knew his statements to be false, or that he made the statements recklessly without regard as to whether or not they were true.

**1. October 28, 2011 Emails (Counts II and III).** Plaintiffs allege that the following statements made by Defendant in his October 28, 2011 emails are defamatory: (a) The statement that Bruce screamed, "Hey, do you want some of this?" and "Are you fucking looking for me?"; (b) the statement that Bruce has tried to intimidate other people by "this very behavior"; (c) the statement that Bruce is "clearly mentally unstable"; and (d) Defendant's accusation that Bruce has been harassing Defendant. Plaintiffs offer the following in support of their contention that they have carried their burden in showing clearly and convincingly that Defendant acted with actual malice and that there are genuine issues of material facts as to his subjective state of mind.

First, with respect to the statements in (a) above, Bruce Plante admits that he shouted at Defendant but denies that he shouted the precise words Defendant claims. (Opp. S.M.F. ¶¶ 12-13; Pls.' Add'l S.M.F. ¶ 11.) Plaintiffs contend, therefore, that this

discrepancy constitutes a disputed material fact that is sufficient to avoid summary judgment. In other words, they argue that this discrepancy permits an inference that Defendant must have known the words he attributed to Plante in the October 28 emails were false, or that he recklessly disregarded their falsity, because he, Defendant, had personal knowledge of the incident and was telling an untrue version of what Plante said.

This does not satisfy Plaintiffs' burden. While the discrepancy may generate a disputed factual issue as whether Defendant's statements are in fact true, it does not establish, without more, that Defendant seriously doubted the truth of the statements he was making. To the extent the court could make the inference Plaintiffs urge, it hardly reaches the level of clear and convincing evidence that applies to this threshold inquiry, even when considered in connection with the other arguments that follow. In other words, simply denying that Bruce Plante made the statements attributed to him may create an issue of fact as to whether Defendant's statements are true or accurate, but it does not establish by clear and convincing evidence that Defendant knew his statements were false or seriously doubted their truth, which represent his interpretation of the October 27 incident. *See Michaud*, 381 A.2d at 1115 (judgment for defendants appropriate, despite "widely varying perceptions and interpretations" of plaintiff's conduct, where there was no evidence to suggest that defendant's letter, "although possibly biased and exaggerated, was not an *honest* communication relating the author's own interpretation of the plaintiff's conduct"); *see also Lester*, 596 A.2d at 71 ("Evidence that some of [defendant's] factual premises were objectively false, or even that no reasonable person could have believed them to be true, does not show that she knew or disregarded their falsity.").

10

Second, with respect to the statement in (b), Plaintiffs contend that at the time Defendant composed and sent the October 28 emails, he "was not aware of any instances where Bruce had allegedly engaged in 'this very behavior' towards others." (Pls.' Addt'l S.M.F. ¶ 18.) If accurate and supported, Statement 18 might create a dispute as to whether Defendant seriously doubted that Bruce had intimidated others by "this very behavior." However, Statement 18 is not supported by its accompanying record citation. (*See* Long Dep. 85:19-86:16, 171:5-172:1.) On the contrary, the cited portion of Defendant's testimony reveals that, on October 27, 2011, Defendant *was* aware of instances in which Bruce Plante had engaged in behavior of a similar nature, including banging on his steering wheel, hollering, "flipping off" a man named Gary Day, and jumping in front of Ms. Wheeler's car. (*Id.* at 171:5-172:1.)

In addition, Plaintiffs contend that Defendant's references in the email to the experiences of another individual (Tom Lavigne) with Bruce Plante are evidence of Defendant's subjective knowledge of the falsity of his statements in the October 28 email because Tom Lavigne testified in his deposition that he "did not tell anyone about the alleged incidents where Bruce Plante jumped in front of his car, the alleged 'road rage' incidents, or the incident where Bruce allegedly told Mr. Lavigne that he better hope his house doesn't catch on fire." (Pls.' Addt'l S.M.F. ¶ 32.) Even if true, Statement 32 does not create a dispute as to whether Defendant seriously doubted that Bruce Plante had engaged in "this very behavior" toward others because the record includes other alleged instances of similar behavior by him on which Defendant could have based his statement. (Def.'s Reply S.M.F. ¶ 23.)[6]

_____

[6] Paragraph 23 of Defendant's Reply to Plaintiffs' Additional Statement of Material Facts recites over a dozen incidents of which Defendant was aware that involved actions by Plaintiffs that could be fairly characterized as harassing toward himself and others. (*See* Def.'s Reply S.M.F.

Finally, in light of the foregoing, Plaintiffs have not offered clear and convincing evidence that generates a genuine material disputed factual issue as to whether Defendant seriously doubted the truth of his statements that Bruce Plante is "clearly mentally unstable" and has been harassing Defendant.

**2. Complaint to Berwick P.D. (Count IV).** Defendant's statements that he feels uncomfortable with Bruce Plante coming to his house and does not want Bruce to make contact with him are statements of opinion, which are not actionable. *See Lester*, 596 A.2d at 69; *True v. Ladner*, 513 A.2d 257, 261-62 (Me. 1986); *Caron v. Bangor Publ'g Co.*, 470 A.2d 782, at 784 (Me. 1984).

Even if the statement is considered a statement of fact and not opinion, Plaintiffs have not adduced sufficient clear and convincing prima facie evidence to generate a genuine issue of material fact with respect to whether Defendant subjectively knew the falsity or recklessly disregarded the falsity of both his statement about feeling uncomfortable with Bruce Plante coming to his house or the statement that he is being harassed by Bruce Plante. On the contrary, the record as a whole suggests otherwise. Plaintiffs have not met their threshold burden with regard to the statements in Count IV.

**3. April 24, 2012 Email (Count V).** This count involves Defendant's statement that "There is much more to that story as well as other abuses by Bruce and Dennis . . . following people, harassing people . . . ." Plaintiffs point to several statements of fact which appear to create a dispute as to Defendant's state of mind, but ultimately fail to do so either because they are not supported by the accompanying record citation or

---

¶ 23, at pages 26-28.) Contrary to Plaintiffs' contention, the record does not clearly establish that Defendant was not aware of some of these incidents at the time of the October 27, 2011 incident.

12

because they create a dispute as to the truth of Defendant's statements, but not as to whether Defendant seriously doubted their truth.

First, Plaintiffs state that, "[Defendant] knows of no other 'abuses' other than those stated in the April 24, 2012 complaint." (Pls.' Addt'l S.M.F. ¶ 29.) However, the accompanying record citation makes clear that Defendant intended "other abuses" to mean the allegations stated in his April 24 email, i.e., following and harassing people. (Long Dep. 78:4-81:25.)   The fact that Defendant did not know of abuses in addition to those in his April 24 email, even if true, does not suggest that Defendant seriously doubted the truth of the abuses alleged in the email.

Second, Plaintiffs state that "Neither [Bruce] nor [Dennis] have 'harassed,' 'bullied,' 'intimidated,' or 'followed' people" and "Neither Bruce nor Dennis has followed people in town." (Pls.' Addt'l S.M.F. ¶¶ 23, 25.)   Although Statements 23 and 25 create a factual dispute as to whether Defendant's statement is true, again they do not clearly and convincingly generate a factual dispute as to whether Defendant seriously doubted that Bruce and Dennis have followed and harassed people, based on Defendant's own experience and the alleged incidents that had been relayed to him by others, including Ms. Wheeler, Chief Towne, and Captain Locke. (Supp.'g S.M.F. ¶¶ 18, 22, 38-39.)   See also Footnote 6, *supra*.

Third, Plaintiffs state that, "[Defendant's] only basis for claiming Dennis has 'followed' people is that he drove too closely behind him." (Pls.' Addt'l S.M.F. ¶ 26.) The accompanying record citation shows that Defendant testified that his basis for believing Dennis Plante was following *Defendant himself* during his drive to New Hampshire was the fact that Dennis was driving too close to Defendant's vehicle. (Long Dep. 80:19-81:18.) This testimony says nothing about whether Defendant knew of alleged instances in which Bruce or Dennis Plante have followed *others* and therefore

13

cannot be used to create a dispute as to whether Defendant entertained serious doubts about the truth of his statement.

Finally, Plaintiffs state that, "[Defendant] does not have any information suggesting Dennis has harassed people." (Pls.' Addt'l S.M.F. ¶ 30.) Plaintiffs cite to a portion of Defendant's deposition testimony in which he admits he does not have personal knowledge of any harassment by Bruce or Dennis Plante toward others, but asserts he is relying on alleged instances of harassment that have been relayed to him by others. (Long Dep. 85:9-86:16.) This citation does not support their claim that Defendant had no information regarding harassment by Dennis Plante. On the contrary, it supports the opposite conclusion. More importantly, Plaintiffs have provided no evidence that Defendant seriously doubted the information relayed to him or subjectively believed it to be false. Plaintiffs have not met their burden with regard to count V.

**4. May 23, 2012 Email (Count VI).** Defendant's statements in issue in Count VI are that Bruce and Dennis Plante "continually lie to further 'Their Cause' at any cost" and that they, "with the help of more than a few have driven this town into the ground and lied, followed, intimidated, and harassed people to get 'Their Cause' pushed through . . . at any cost." Plaintiffs state that, "Neither [Bruce] nor [Dennis] have lied to get 'their cause' pushed through at any cost." (Pls.' Addt'l S.M.F. ¶ 24.) Again, as was the case with Statements 11, 23, and 25 upon which Plaintiffs relied with respect to their challenges to the foregoing counts and which are referenced above, their denial in Statement 24 that they have not lied to advance their interests may create a disputed fact as to whether Defendant's statements are false and therefore potentially defamatory; however, it does not, without more, constitute clear and convincing evidence that generates a factual dispute as to whether Defendant knew the falsity of

14

these statements or seriously doubted their truth. Plaintiffs have not made a clear and convincing prima facie showing that Defendant subjectively made these, or the other allegedly defamatory statements, "with the high degree of awareness of their probable falsity" that is constitutionally required under the Supreme Court's decisions. *Michaud*, 381 A.2d at 1116.

**5. March 30, 2013 Email (Count VIII).** Finally, Count VIII asserts that Defendant's statements from the draft MRI report, specifically that "Several [firefighters] cite Bruce as hostile, belligerent and bad for community relations" and "Area fire chief cites Bruce 'impossible to work with'" are defamatory. Even if the final MRI report did not include these statements or these statements turned out to be false in whole or part, (Pls.' Addt'l S.M.F. ¶ 36), this, without more, does not satisfy the threshold requirement of a clear and convincing prima facie showing that Defendant subjectively knew these statements to be false or entertained serious doubts that the statements were included in the report or that they were true. Plaintiffs therefore have not met their burden with regard to count VIII.

Accordingly, Defendant's motion for summary judgment will be granted as to Counts II, III, IV, V, VI and VIII.

### D.  The Punitive Damage Count

Count IX of the complaint sets out a claim for punitive damages based on the alleged defamatory conduct in Counts I through VIII. Because summary judgment is granted to Defendant on the predicate counts, the court likewise will enter summary judgment for Defendant with respect to Count IX. *See Jolovitz v. Alfa Romeo Distribs. of N. Am.*, 2000 ME 174, ¶ 11, 760 A.2d 625 (punitive damages not available where summary judgment granted on underlying negligence claim because "a claim for punitive

15

damages will not lie unless the plaintiff receives compensatory or actual damages based on the defendant's tortious conduct").

### III. Order

In accordance with the foregoing, Defendant's motion for summary judgment is GRANTED as to all remaining counts, namely Counts II, III, IV, V, VI, VIII, and IX.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED.**

DATE:    November 7, 2016

Wayne R. Douglas
Justice, Superior Court

16

STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.  CV-13-148

*PAF-YOR- 12-04-14*

BRUCE PLANTE and
DENNIS PLANTE,

      Plaintiffs


v.

                                 ORDER


RONALD P. LONG,

      Defendant


The defendant has filed a special motion to dismiss the complaint in its entirety pursuant to 14 M.R.S. §556 and a motion to dismiss.

Those motions have been briefed and were argued with skill and careful preparation.  The motions will be denied for two reasons.

In 1995 Maine enacted an anti-Strategic Lawsuit Against Public Participation statute at 14 M.R.S. §556.   Its history and provisions have most recently been discussed in *Town of Madawaska v. Cayer*, 2014 ME 121.   The statute provides that, "The special motion to dismiss may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper."   Here the defendant, who initially was without counsel, filed the motion some 161 days after service of the complaint and more than 60 days after counsel entered the case.   There are no sufficient reasons to extend the 60-day period.

The second reason for denying the motion, beyond its being untimely, is that the facts are not yet clear enough to decide whether this was an improper attempt by public

officials to muzzle criticism or a proper suit by unjustly maligned and defamed individuals. See generally *Nader v. Maine Democratic Party (Nader II)*, 2013 ME 51.

The parties did agree that Counts I and Count VII of the complaint should be dismissed. A stipulation of dismissal was previously entered dismissing those two counts.

The entry is:

Defendant Ronald P. Long's motion to dismiss and special motion to dismiss are denied.

Dated: December 4, 2014

Paul A. Fritzsche
Justice, Superior Court

2

CV-13-148

ATTORNEYS FOR PLAINTIFFS:
GENE LIBBY
TYLER SMITH
LIBBY O'BRIEN KINGSLEY & CHAMPION LLC
62 PORTLAND RD UNIT 17
KENNEBUNK ME  04043


ATTORNEYS FOR DEFENDANT:
JONATHAN BROGAN
JOHNATHAN G NATHANS
NORMAN HANSON & DETROY LLC
PO BOX 4600
PORTLAND ME  04112